IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 26, 2006

**JORGE HERRERA v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-1003     Cheryl A. Blackburn, Judge**

_____

**No. M2005-02962-CCA-R3-PC - Filed November 9, 2006**

_____

The petitioner, Jorge Herrera, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel and that his guilty pleas were unknowing and involuntary. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Nathan Moore, Nashville, Tennessee, for the appellant, Jorge Herrera.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 11, 2002, the Davidson County Grand Jury indicted the petitioner on one count of conspiracy to deliver over three hundred pounds of marijuana within one thousand feet of a school zone, one count of possession with the intent to deliver over seventy pounds of marijuana, one count of delivery of over seventy pounds of marijuana, and two counts of conspiracy to commit money laundering. On January 12, 2004, the petitioner pled guilty to one count of conspiracy to deliver over seventy pounds of marijuana, one count of possession with the intent to deliver over seventy pounds of marijuana, delivery of over seventy pounds of marijuana, and two counts of conspiracy to commit money laundering. Pursuant to the terms of his negotiated plea agreement, he was sentenced as a Range I, standard offender to an effective sentence of fifteen years in the Department of Correction.

On November 8, 2004, the petitioner filed a *pro se* petition for post-conviction relief alleging that he was denied the effective assistance of trial counsel and that his guilty pleas were "involuntary and coerced." Following the appointment of post-conviction counsel, the petitioner filed an amended petition on August 10, 2005, in which he alleged that trial counsel was ineffective for, among other things, failing to adequately investigate the facts of the case and failing to fully inform him of the nature and consequences of his guilty pleas. The petitioner further alleged that he lacked a sufficient grasp of the English language to understand the guilty plea proceedings and that his guilty pleas were therefore unknowing and involuntary.

At the September 6, 2005, evidentiary hearing, the petitioner, testifying through an interpreter, complained that trial counsel never followed through on his promises to him. He said he asked counsel for a copy of everything in his file, including a copy of the only motion counsel filed in the case, a motion for Jencks material, but counsel did not give him anything. He stated that counsel did not discuss a defense strategy with him, interview necessary witnesses, investigate the facts of the case, or file a motion to suppress the results of the search. In addition, counsel "kept on putting obstacles [up]" whenever he expressed his desire to go to trial, telling him that his codefendant's attorney would damage his case and that he could receive forty to sixty years at 100% if convicted at trial. The petitioner said he believed that trial counsel wanted him to plead guilty because he was not prepared to take the case to trial.

The petitioner testified that trial counsel told him that his plea bargain would result in his having to serve only an additional twenty-seven months in jail. Moreover, counsel told him that he could earn jail credit at the rate of "two days for one," if he worked while in jail, which meant that his actual additional time to serve would be only fourteen months. The petitioner testified that trial counsel guaranteed that he would be released on parole after serving only fourteen months, telling him that he had friends on the parole board and that he would write the board each month on the petitioner's behalf.

On cross-examination, the petitioner testified that it was not his decision to plead guilty and that he entered his pleas only because trial counsel told him it was in his best interest to do so. He said trial counsel instructed him "not to answer no to the questions" and not to ask any questions of the trial judge during the plea colloquy because the judge "would get angry." He acknowledged to the post-conviction judge, who had also presided over his guilty plea hearing, that he had declined the services of an interpreter at the guilty plea hearing. He claimed, however, that despite what he had told the judge, he had not really understood the guilty plea proceedings. He said he had not asked the trial judge any questions because of trial counsel's instructions that he should not anger the judge. The petitioner further testified that he thought trial counsel "should have conducted a deeper investigation regarding [his] arrest." However, he was unable to provide the names of any witnesses that trial counsel failed to interview. Instead, he stated that he thought trial counsel should have been "the one to find out and to know how to investigate these kind of things."

Trial counsel testified that the petitioner retained him after firing his original trial counsel, with whom he had experienced a breakdown in communication. He said he brought an interpreter

-2-

with him when he first met with the petitioner but quickly realized that it was unnecessary. Counsel stated: "[I]f you speak slowly with him he can understand you and speak. He speaks [English] well." Trial counsel testified that he went to see the petitioner in jail "a number of times" and spoke with him "many times" by telephone. He said he and his partner thoroughly investigated the case from the beginning and were fully prepared to take the case to trial. Among other things, they spoke several times with the police officers involved and examined the evidence at the crime lab. In his opinion, the vice officers involved in the case had done a good job and consequently had the petitioner "tied up tight." In addition, the case was already set for trial by the time he became involved. Therefore, he and his partner did not think they would have any success with a motion to suppress.

Trial counsel testified that the petitioner "wanted to cut a deal to time served," but such a deal was never offered. Instead, the State's original offer, which was negotiated by the petitioner's original trial counsel, was for fifteen years at 30%, contingent upon the petitioner's codefendants also pleading guilty. However, one of the codefendants would not agree to the offer and trial counsel and his partner therefore "began from day one getting ready for trial." Trial counsel testified that they were fully prepared for trial and had communicated that fact to the petitioner, but a few days before the trial was scheduled to begin, he was able to negotiate for the petitioner's codefendant to receive an offer of eight years with a sentencing hearing. That, in turn, "opened the door" for the State to offer the petitioner fifteen years at 30%, which was within the parameters of what the petitioner had previously authorized him to accept. He, therefore, accepted the offer and then contacted the petitioner, who confirmed that he wished to enter into the plea bargain agreement. Trial counsel testified that he did not make any promises to the petitioner about what would happen at trial but told him that he thought it was likely he would be convicted of a Class A felony.

On cross-examination, trial counsel testified that he had been a licensed attorney for six years. He said that it was "[a]bsolutely" the petitioner's decision to plead guilty and that he never told him what to say to the trial judge during the plea colloquy. He further testified that he never told the petitioner that he knew anyone on the parole board and never made any promises to him as to when he would be released. He did, however, tell the petitioner that he would contact the parole board on his behalf. In response to questions posed by the post-conviction court, trial counsel agreed that the court had noticed a problem with the petitioner's original plea agreement, caused by the petitioner's having been out on bond at the time he committed the offenses. Consequently, he and the assistant district attorney had renegotiated the plea, with the result that the petitioner was able to plead to a Class B, instead of Class A, felony, in order to keep the effective sentence of fifteen years. Trial counsel testified that he had explained the situation to the petitioner, who was "quite pleased" that the conviction offense had been reduced from a Class A felony.

On December 19, 2005, the post-conviction court entered an order denying the petition for post-conviction relief. Among other things, the court specifically accredited the testimony of trial counsel over that of the petitioner in finding that the petitioner had not met his burden of demonstrating either that he was denied the effective assistance of counsel or that his guilty pleas were unknowing and involuntary. Thereafter, the petitioner filed a timely appeal to this court.

## ANALYSIS

The petitioner contends on appeal that the trial court erred in finding that he received effective assistance of counsel and that he entered his guilty pleas knowingly, intelligently, and voluntarily. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel"" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

The petitioner claims that trial counsel was ineffective for failing to adequately investigate the facts of his case and for failing to fully communicate to him the ramifications of his guilty pleas. The record in this case, however, fully supports the post-conviction court's finding that counsel provided effective representation. Trial counsel's testimony, which was specifically accredited by the post-conviction court, established that he spoke with the petitioner on a number of different occasions, thoroughly investigated the facts and was fully prepared to take the case to trial, and explained to the petitioner the nature and consequences of the guilty plea agreement. Trial counsel testified that the police had done an excellent job, that the case against the petitioner was very strong, and that he had not believed he would have any success with a motion to suppress. Trial counsel also testified that he made no promises to the petitioner about the amount of time he would be required to serve before being released on parole. In sum, there is no evidence that counsel was deficient in his representation or that the petitioner would not have pled guilty were it not for counsel's alleged deficiencies. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of his claim of ineffective assistance of counsel.

In an interrelated claim, the petitioner also contends that his guilty pleas were not knowingly, voluntarily, or intelligently entered. In essence, he argues that he was induced or coerced into pleading guilty due to trial counsel's various deficiencies in representation, including his failure to prepare for trial or to adequately explain the plea agreement to him. The petitioner asserts that he was unable to effectively communicate with trial counsel or the trial court, believed that trial counsel was unprepared to try the case, and felt that he had no other choice but to accept the plea offer. The State argues that the evidence supports the post-conviction court's finding that the petitioner freely, voluntarily, and knowingly entered his pleas. We agree with the State.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, the Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

As the petitioner notes in his brief, a plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him

and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Trial counsel testified that the petitioner was able to understand English and did not need the services of the interpreter. Moreover, the transcript of the guilty plea hearing reflects that an interpreter was present and available for the petitioner to use at the guilty plea hearing but that the petitioner refused the interpreter's services, telling the trial court that he could speak English. The petitioner informed the trial court that trial counsel had gone over the plea agreement with him, that he had not had any questions, and that he had signed the agreement. He said that he would have asked trial counsel if he had had any questions and that he was satisfied with counsel's representation. He further stated that he had taken some antidepressant medication that morning, but it did not affect his ability to think or understand what he was doing.

The transcript of the guilty plea hearing further reflects that the petitioner responded appropriately when asked if he understood the various constitutional rights as described by the trial court, if he understood he was waiving certain rights by pleading guilty, whether he had been fully informed of the charges and the plea agreement by his counsel, whether he understood his guilty pleas, and whether he was satisfied with counsel's representation. We, therefore, conclude that the record fully supports the post-conviction court's finding that the petitioner's guilty pleas were knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to show either that trial counsel was ineffective or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

-6-